IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CITIZENS FOR CLEAN POWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 09-125-SLR |
| | ) | |
| INDIAN RIVER POWER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Mary A. Jacobson, Esquire, and Michael D. Fiorentino, Esquire, *Pro Hac Vice*, of Mid-Atlantic Environmental Law Center, Wilmington, Delaware. Counsel for Plaintiff.

Timothy Jay Houseal, Esquire, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: William M. Bumpers, Esquire, and Joshua B. Frank, Esquire, of Baker Botts L.L.P., Washington, D.C.

**MEMORANDUM OPINION**

Dated: July 23, 2009
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Citizens for Clean Power ("plaintiff") filed this suit against Indian River Power, LLC ("defendant"), on February 26, 2009, alleging past and continuing violations of the Clean Air Act ("the Act"), 42 U.S.C. §§ 7401 *et seq.* (2006). (D.I. 1) Plaintiff had previously, on November 6, 2008, raised these allegations in a notice of intent to sue letter sent to defendant, the Delaware Department of Natural Resources and Environmental Control ("DNREC"), and the United States Environmental Protection Agency ("EPA"); plaintiff initiated the instant suit only after concluding that DNREC's negotiated settlement with defendant did not constitute "diligent[ ] prosecut[ion]" of the alleged violations. (*Id.* at ¶¶ 1, 3, 5-6)

Pending before the court is defendant's motion to dismiss for lack of subject matter jurisdiction. (D.I. 5) In support of its motion, defendant argues principally that its negotiated settlement with DNREC does constitute "diligent[ ] prosecut[ion]" of the alleged violations, thereby precluding plaintiff's suit based on the same alleged violations. The court has jurisdiction over the pending matter pursuant to 28 U.S.C. § 1331. For the reasons that follow, the court will grant the motion.

## II. BACKGROUND

### A. The Parties

Plaintiff is an unincorporated association of individuals and concerned citizens residing primarily in Sussex County, Delaware, with its principal place of business in Lewes, Delaware. (D.I. 1 at ¶ 9) Plaintiff brings this suit on behalf of itself and its members. (*Id.*)

Defendant is a Delaware limited liability company with its principal place of business in Millsboro, Delaware. (*Id.* at ¶ 13) At this site, defendant operates the Indian River Generating Station ("the Station"), the fossil-fuel-fired steam electric plant that emanates the allegedly illegal air emissions. (*Id.*) Plaintiff's individual members reside, work, or otherwise breathe the air near the Station and are thereby exposed to defendant's emissions. (*Id.* at ¶ 10)

### B. Enforcement of the Clean Air Act and its Companion Regulations

The Act authorizes EPA to promulgate National Ambient Air Quality Standards ("NAAQS") that each state must enforce.[1] *See Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 566 (2007). Pollution levels must be maintained below the ceilings established by the NAAQS. The Act directs states to develop a "state implementation plan" ("SIP"), subject to EPA approval, to comply with the NAAQS. 42 U.S.C. § 7410. Delaware's SIP has been approved by EPA and is codified at 40 C.F.R. §§ 52.420-52.465.

In addition to the NAAQS, EPA promulgated technology-based New Source Performance Standards ("NSPS"), applicable to many categories of industrial stationary sources of air pollution. 42 U.S.C. § 7411. Under Title V of the Act, Congress created, in the 1990 Amendments to the Act, a stationary source operating permit for major sources of air pollution, imposing, *inter alia*, requirements for emissions monitoring, reporting, record keeping, and compliance certification. *Id.* § 7661. The Station's Title V operating permit ("permit") subjects the Station's four generating units ("units") to the

---

[1]The NAAQS are designed to limit various pollutants. *See Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 566 (2007).

2

specific opacity limitations delineated in the Delaware SIP and also subjects unit 4 to certain opacity limitations detailed in the NSPS.[2] Pursuant to permit requirements, defendant collects and reports to DNREC continuous opacity monitoring data for its four units.

The Act provides that "any person may commence a civil action on his own behalf" against violators of the Act's emission standards or limitations. See 42 U.S.C. § 7604(a)(1). However, these "citizen suits" pursuant to 42 U.S.C. § 7604(a)(1) may not be commenced without plaintiff first having given 60 days notice of the violation to EPA, the state, and the violator. Id. § 7604(b)(1)(A). Moreover, even where plaintiff has provided 60 days notice, a citizen suit may not be commenced if EPA or the state already "has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance." Id. § 7604(b)(1)(B).

### C. Events Preceding the Instant Suit

In 2006, pursuant to both the Act and state law, DNREC promulgated a new regulation ("Regulation 1146") that required electric generating plants to reduce emissions with respect to certain pollutants, namely mercury, nitrogen oxide, and sulfur dioxide. See 7-1000-1146 Del. C. Regs. (Weil 2007). Defendant challenged Regulation 1146 in court and, on September 24, 2007, the Delaware Superior Court entered a consent order ("the Multi-Pollutant Consent Order") resolving the lawsuit. (D.I. 6 at 2; Id., ex. 1) The Multi-Pollutant Consent Order requires defendant to

---

[2]Opacity, in the context of air quality regulation, is "a measurement of the percentage of light which is blocked by the presence of pollution, usually in the exhaust steam from a stack." (D.I. 1 at ¶ 33)

"discontinue operation of, and moth ball[,]" units 1 and 2 no later than May 1, 2011, and May 1, 2010, respectively. (*Id.*, ex. 1 at ¶¶ 27-28) Until these shutdown dates, units 1 and 2 are to be operated at decreased emissions levels. (*Id.* at ¶¶ 11-12, 17, 23) Units 3 and 4 are to be operated at progressively decreased emissions levels until January 1, 2012, when these units must be operated in full cornpliance with the emissions limitations contained in the Multi-Pollutant Consent Order, Regulation 1146, and **any other applicable federal or state laws**. (*Id.* at ¶¶ 11-30) The Multi-Pollutant Consent Order mandates that defendant meet the emission reduction requirements through measures, the implementation of which defendant estimates will exceed several hundred million dollars. (D.I. 6 at 2)

More than one year later, on November 6, 2008, plaintiff sent a notice of intent to sue letter to EPA, DNREC, and defendant, alleging that the Station had violated opacity regulations from 2004 to 2008 in contravention of the Act, Delaware's SIP, the NSPS, and defendant's permit.[3] (D.I. 1 at ¶¶ 1, 3) Plaintiff's letter also apprised the parties that it intended to bring a citizen suit against defendant pursuant to the Act, 42 U.S.C. § 7604(b). (D.I. 6, ex. 3 at 7) On January 5, 2009, the fifty-ninth day following service of plaintiff's letter, DNREC filed a complaint against defendant in Delaware Superior Court alleging the same violations raised in plaintiff's letter. (*Id.*, ex. 4) On that same day, DNREC filed a proposed consent order that would resolve the alleged violations and require defendant to implement opacity-controlling measures in addition to the measures already required by the Multi-Pollutant Consent Order. (*Id.*, ex. 5 at ¶ 4)

---

[3]The court notes that plaintiff's letter alleged violations of laws distinct from Regulation 1146, which was the subject of the Multi-Pollutant Consent Order.

Approximately one month later, on February 13, 2009, the Superior Court entered the consent order ("Opacity Consent Order"), finding that it "was negotiated at arms length and in good faith, will avoid litigation over DNREC's claimed violations, will address the alleged opacity exceedances, and is fair and reasonable and in the interest of the Parties and the people of this State." (*Id.* at 2)

> The Opacity Consent Order provides, in pertinent part, that defendant:
>
> [S]hall immediately commence and by no later than April 30, 2009, complete an investigation on Units 3 and 4 at [defendant's Station] to evaluate the cause of opacity exceedances from those Units. Within 30 days after completing the investigation, [defendant] will submit a Report of its findings to DNREC. If the findings point to causes that may be resolved or mitigated through measures that are cost-effective and commercially reasonable **in light of the remaining period prior to full implementation of emissions limitations under the Multi-P[ollutant] Consent Order**, [defendant] shall propose a schedule for implementation of such interim measures. Upon approval by DNREC, [defendant] shall implement such interim measures upon the schedule agreed upon by DNREC and [defendant].
>
> . . . .
>
> No later than 90 days after entry of this [Opacity Consent Order], [defendant] shall purchase and provide to DNREC an Ultrafine Particle Monitor . . . . [t]he cost of [which] is not intended to exceed $60,000.
>
> . . . .
>
> Within 30 days after entry of this [Opacity Consent Order], [defendant] shall pay a civil penalty of $5,000 to DNREC.

(*Id.*, ex. 5 at ¶¶ 4, 7, 10) (emphasis added)

On February 26, 2009, plaintiff filed the instant suit, alleging that, based on defendant's own opacity data, defendant has violated the opacity limitations 6,304 times between 2004 and 2008. (D.I. 1 at ¶ 55) Count 1 of the complaint alleges that

5

defendant's units 1 and 2 violated the Delaware SIP and the permit 3,151 times.[4] (Id. at ¶¶ 35-38) Count 2 alleges that defendant's unit 3 violated the Delaware SIP and the permit 2,373 times.[5] (Id. at ¶¶ 41-43) Count 3 alleges that defendant's unit 4 violated the Delaware SIP and the permit 677 times.[6] (Id. at ¶¶ 46-49) Count 4 alleges that defendant's unit 4 violated the NSPS and the permit 82 times.[7] (Id. at ¶¶ 52-53) Count 5 alleges that defendant's unit 4 violated a separate NSPS provision and the permit 21

---

[4]Delaware Air Quality Regulation No. 14 Visible Emissions ("Regulation No. 14"), which is incorporated into the Delaware SIP, provides that "Visible Emissions shall not exceed 20% opacity for an aggregate of more than 3 minutes in any one hour period." (D.I. 1 at ¶ 35) Defendant's permit also includes this limitation. (Id.) According to the data collected by defendant and submitted to DNREC, units 1 and 2 violated this limitation 2,289 times between 2004 and 2008. (Id.; id., ex. B) Regulation No. 14 also provides that "Visible Emissions shall not exceed 20% opacity for an aggregate of more than fifteen (15) minutes in any twenty-four (24) hour period." (Id. at ¶ 37) Defendant's permit also provides this limitation. (Id.) According to the opacity data, units 1 and 2 violated this limitation 322 times between 2004 and 2008. (Id.; id., ex. C)

[5]Both of the limitations contained in Regulation No. 14, see supra note 4, apply to unit 3. (D.I. 1 at ¶ 41) Based on the opacity data, unit 3 violated the one-hour limitation 2,163 times and violated the twenty-four hour limitation 210 times between 2004 and 2008. (Id. at ¶¶ 41, 43; id., exs. B-C)

[6]Both of the limitations contained in Regulation No. 14, see supra note 4, apply to unit 4. Based on the opacity data, unit 4 violated the one-hour limitation 598 times and violated the twenty-four hour limitation 79 times between 2004 and 2008. (D.I. 1 at ¶¶ 47, 49; id., exs. D-E)

[7]40 C.F.R. § 60.42 provides that an owner or operator of a fossil-fuel-fired steam generator shall not discharge gases "exhibiting greater than 20% opacity except for one six-minute period per hour of not more than 27% opacity." 40 C.F.R. § 60.42(a)(2). This limitation is incorporated into defendant's permit. (D.I. 1 at ¶ 52) According to the opacity data, unit 4 violated this limitation 82 times between 2004 and 2008. (Id.; id., ex. F)

times.[8] (*Id.* at ¶¶ 56-57)

## III. STANDARD OF REVIEW

"Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim." *Samsung Elecs. Co. v. ON Semiconductor Corp.*, 541 F. Supp. 2d 645, 648 (D. Del. 2008). Rule 12(b)(1) motions may present either a facial or factual challenge to the court's subject matter jurisdiction. *Id.* Where the movant presents a facial challenge, the court must accept all factual allegations in the complaint as true and may only consider the complaint and documents referenced therein or attached thereto. *Id.* (citing *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Where the movant presents a factual challenge, the court need not confine its consideration to the allegations of the complaint nor accept those allegations as true. *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Rather, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, "to resolve any factual issues bearing on jurisdiction." *Samsung*, 541 F. Supp. 2d at 648 (citing *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)). Plaintiff bears the burden of establishing by a preponderance of the evidence that subject matter

---

[8]The Code of Delaware Regulations provides that an owner or operator of fuel-burning equipment shall not discharges gases "[g]reater than 20% opacity, except that a maximum of 40% opacity shall be permissible for not more than two minutes in any hour." 7-1000-1120 Del. C. Regs. § 2.2.2. This limitation is incorporated into defendant's permit. (D.I. 1 at ¶ 56) According to the opacity data, unit 4 violated this limitation 21 times between 2004 and 2008. (*Id.*; *id.*, ex. G)

7

jurisdiction exists.[9] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

In the case at bar, subject matter jurisdiction turns on whether DNREC " 'diligently prosecut[ed] a civil action' to require compliance with the [relevant laws]." (D.I. 1 at ¶ 6) If DNREC has, plaintiff may not commence its citizen suit and the court lacks subject matter jurisdiction. *See* 42 U.S.C. § 7604(b)(1)(b). If DNREC has not, plaintiff may commence this citizen suit and the court has subject matter jurisdiction. *See id.* § 7604(a)(1). Plaintiff has alleged that DNREC has not diligently prosecuted, and defendant challenges that factual assertion by introducing evidence, including the Multi-Pollutant Consent Order, in an attempt to show that it did diligently prosecute. This is a factual challenge, consequently, the court is neither confined to the allegations in the complaint nor bound to presume their truth.

## IV. DISCUSSION

Defendant argues principally that the court lacks subject matter jurisdiction because DNREC has already diligently prosecuted plaintiff's claims. Because the court

---

[9]Although the court should determine subject matter jurisdiction at the outset of a case, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation." 2 James W. Moore, Moore's Federal Practice § 12.30[1] (3d ed. 1997). Rather, a party may first establish jurisdiction

> by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection).

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38 (1995) (citations omitted).

agrees, and because that conclusion resolves the motion, the court confines its analysis to that argument.

As stated before, the dispositive issue here is whether DNREC "diligently prosecut[ed] a civil action in a court of . . . a State to require compliance with the [Act and other relevant legal standards]." *Id.* § 7604(b)(1)(B). The relevant test to determine if a state enforcement action qualifies as diligent prosecution is whether the prosecution is "totally unsatisfactory." *Clean Air Council v. Sunoco, Inc. (R&M)*, Civ. No. 02-1553 GMS, 2003 WL 1785879, at *6 (D. Del. Apr. 2, 2003). "[T]he court must presume the diligence of the state's prosecution of a defendant absent persuasive evidence that the state has engaged in a pattern of conduct that could be considered dilatory, collusive, or otherwise in bad faith." *Id.* at *3 (citation omitted). The choice to settle with a violator remains within a government agency's discretion, "even if citizens might have preferred more stringent terms than those determined by the government to be appropriate." *Id.* (citation omitted).

As the court has before stated:

> [T]he mere fact that the settlement reached in the state action was less comprehensive than the remedy sought in the instant action is not sufficient in itself to overcome the presumption that the state action was diligently prosecuted. Indeed, if the question of "diligent prosecution" were always to depend upon the outcome of the prior pending state suit, a state suit in which the defendant prevailed or reached some compromise with the state could never preclude a subsequent citizens' suit in the federal courts no matter how diligently the state suit had been prosecuted.

*Id.* (citation omitted). The citizen suit provision "'was not intended to enable citizens to commandeer the federal enforcement machinery.'" *Id.* (quoting *United States EPA v. Green Forest*, 921 F.2d 1394, 1402 (8th Cir. 1990)). Thus, "it is DNREC, not the

citizens, who is principally responsible for enforcing the law." *Id.*

Based upon this standard, the court finds that DNREC diligently prosecuted its suit against defendant. Plaintiff fails to rebut the presumptive diligence of DNREC's prosecution and presents no "persuasive evidence that [DNREC] has engaged in a pattern of conduct that could be considered dilatory, collusive, or otherwise in bad faith." *Id.* Indeed, the Superior Court found that the Opacity Consent Order "was negotiated at arms length and in good faith." (D.I. 6, ex. 5 at 2)

The fact that plaintiff would have preferred "more stringent terms" than those negotiated by DNREC is immaterial.[10] *Clean Air Council*, 2003 WL 1785879, at *3. Although the Opacity Consent Order is admittedly an interim solution to defendant's alleged opacity violations for the "remaining period prior to full implementation of emissions limitations under the Multi-P[ollutant] Consent Order" (D.I. 6, ex. 5 at ¶ 5), the Opacity Consent Order does require defendant (through explicit reliance on the Multi-Pollutant Consent Order) to comply with the Act and all other relevant legal standards.

Plaintiff's argument that the Multi-Pollutant Consent Order does not address the

---

[10]The court finds that plaintiff's argument with respect to the inadequacy of the $5,000 penalty levied against defendant pursuant to the Opacity Consent Order is likewise meritless. Plaintiff argues that the $5,000 penalty was grossly inadequate based on the Delaware statute under which DNREC brought its case, 7 Del. C. § 6005, which provides, in pertinent part, that "[w]hoever violates this chapter or any rule or regulation duly promulgated thereunder . . . shall be punishable . . . [i]f the violation has been completed, by a civil penalty imposed by Superior Court of not less than $1,000 nor more than $10,000 for each completed violation." 7 Del. C. § 6005(b)(1). Plaintiff argues that, based upon defendant's 6,304 alleged violations, the Opacity Consent Order's total civil penalty of $5,000 contravenes the statute. However, the Opacity Consent Order constitutes a negotiated settlement and not a judgment of liability against defendant for "completed violation[s]," as the statute requires. *Id.* The court also notes the wide discretion granted to governmental agencies to settle with alleged violators.

issue of opacity is without merit. Despite the fact that the Multi-Pollutant Consent Order was not specifically engineered to cure defendant's alleged opacity violations, both DNREC and the Superior Court concluded that relying on the Multi-Pollutant Consent Order to address defendant's alleged opacity violations was acceptable.[11] The Multi-Pollutant Consent Order mandates that defendant's units 1 and 2 will be shut down in 2011 and 2010, respectively. (D.I. 6, ex. 1 at ¶¶ 27-28) Units 3 and 4 are to be operated at progressively decreased emissions levels until January 1, 2012, when these units must be operated "in full compliance with the emissions limitations required by this [Multi-Pollutant Consent Order], Regulation 1146, and **any other applicable federal or state requirements**." (*Id.* at ¶ 30) (emphasis added) The federal and state requirements contemplated by the Multi-Pollutant Consent Order clearly include the opacity limitations of the Act, the NAAQS, the NSPS, and the permit.

Plaintiff's argument that certain claims in its complaint were not addressed in the Opacity Consent Order is likewise meritless. DNREC's complaint against defendant covered the same alleged violations contemplated by plaintiff's complaint. In any event, as discussed above, the choice to settle with a violator rests within a government agency's discretion, and plaintiff has presented no persuasive evidence to rebut the presumption of diligent prosecution. *See Clean Air Council*, 2003 WL 1785879, at *3. In short, plaintiff fails to show that DNREC's prosecution was "totally unsatisfactory." *See id.* at *6.

---

[11]The court notes that the Opacity Consent Order provides that the Multi-Pollutant Consent Order "will require [defendant] to take significant and costly measures to control emissions from the [Station] **including measures that will reduce opacity**." (D.I. 6, ex. 5 at 2) (emphasis added)

11

Based on the above analysis, the court finds that DNREC diligently prosecuted its suit against defendant, which precludes plaintiff's suit under 42 U.S.C. § 7604(b)(1)(B). Accordingly, the court grants defendant's motion.[12]

## V. CONCLUSION

For the reasons detailed above, the court grants defendant's motion to dismiss. An appropriate order shall issue.

---

[12]As stated above, *see supra* Part IV at 8-9, because DNREC diligently prosecuted its suit against defendant, the court need not reach defendant's other two arguments.